J-S22031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN DAVID HUMMERT | : | |
| | : | |
| Appellant | : | No. 1710 MDA 2019 |

Appeal from the PCRA Order Entered September 19, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006140-2004

BEFORE:   OLSON, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                            **FILED MAY 15, 2020**

Appellant, Brian David Hummert, appeals from the order entered September 19, 2019, that denied his petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The facts and procedural history underlying this appeal are as follows.

> Pursuant to a Criminal Complaint filed by the Fairview Township Police Department and the Pennsylvania State Police, Appellant ... was arrested on November 03, 2004[,] and charged with the following offenses:  Criminal Homicide, Hindering Apprehension or Prosecution, Obstructing Administration of Law or other Governmental Function, Tampering with or Fabricating Physical Evidence and False Reports to Law Enforcement Authorities.  The Commonwealth alleged that [] Appellant killed his wife, Charlene Hummert, at or around their marital residence at 10 Boeing Road, Lewisberry, York County, Pennsylvania, on or about March 21, 2004.   Charlene Hummert's body was discovered shortly after [] Appellant reported her missing in her white Land

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541–9546.

Rover in a grocery store parking lot within a mile of the Hummert home. [] Appellant was formally arraigned on or about January 14, 2005. At [his] arraignment, [] Appellant was more specifically charged with First-Degree Murder, Third-Degree Murder, Voluntary Manslaughter, Hindering Apprehension or Prosecution, Obstructing Administration of Law or Other Governmental Function, Tampering with or Fabricating Physical Evidence and False Reports to Law Enforcement Authorities. [] Appellant entered a plea of not guilty to all charges presented.

*Commonwealth v. Hummert*, No. 1549 MDA 2012, unpublished memorandum at 1-2 (Pa. Super. filed October 9, 2013).

Appellant filed a suppression motion seeking "to have 'approximately 19' search warrants declared defective by the trial court. This motion was denied[.]" PCRA Court Opinion, dated September 19, 2019, at 6.

On October 19, 2005, [] Appellant pled guilty to Murder in the Third Degree. Pursuant to that plea of guilty, [] Appellant was sentenced by th[e trial c]ourt to two-hundred and forty (240) months to eight-hundred and forty (840) months in prison. Th[e trial c]ourt subsequently allowed [] Appellant to withdraw his guilty plea due to ineffective assistance of counsel.

*Hummert*, No. 1549 MDA 2012, at 2.

During the subsequent trial by jury, the Commonwealth presented the testimony of Carolyn Benish, a close friend and co-worker of the victim, who, when asked if the victim "ever mention[ed the] existence or possible existence of a stalker[,]" answered:

Yes. . . . She was upset at work one day, and I saw her every day cause I mean we worked together, and she was saying that somebody -- she thought somebody was following her, and we talked about it quite a bit and what she could do about it.

N.T. First Trial at 528-29.

Appellant was found guilty of Murder in the First Degree and Hindering Apprehension or Prosecution. On November 30, 2006, [] Appellant was sentenced by th[e trial c]ourt to life in prison without parole.

[] Appellant appealed to the Pennsylvania Superior Court on December 01, 2006[,] from the Judgment of Sentence entered by the Lower Court. The Judgment of Sentence was affirmed by the Superior Court of Pennsylvania on October 31, 2007. [**Commonwealth v. Hummert**, 943 A.2d 315 (Pa. Super. 2007) (unpublished memorandum).]

[] Appellant filed a timely [PCRA] Petition on January 22, 2008 and an Amended [PCRA] Petition ... was filed on May 27, 2008. Following an Evidentiary Hearing and the filing of Briefs, the Trial Court, on November 04, 2008, granted a New Trial due to the Commonwealth's failure to make full and complete disclosures. The Commonwealth filed a timely appeal to the Superior Court of Pennsylvania on November 10, 2008[,] and by Order dated January 22, 2010, the [] Superior Court affirmed the grant of a new trial. [**Commonwealth v. Hummert**, 991 A.2d 357 (Pa. Super. 2010) (unpublished memorandum)].

The matter was returned to the Lower Court for a new trial. Prior to Trial, a Motion to Dismiss was filed by [] Appellant. An Order was issued by the Lower Court, withdrawing the Charge of Obstruction [of] the Administration of Law and allowing Individual Voir Dire to be conducted by the parties in selection of the jury panel. Briefs were filed on the Double Jeopardy issue and on June 30, 2010, th[e trial c]ourt issued an Order denying [] [Appellant's] Motion to Dismiss. A timely Notice of Appeal was filed by [] Appellant on July 15, 2010[,] and on April 11, 2011, the Lower Court's Order denying the requested relief by [] Appellant was affirmed by the Superior Court of Pennsylvania. A Petition for Allowance of Appeal was denied by the Supreme Court of Pennsylvania on November 29, 2011. A second Jury Trial was held in this matter, commencing on Monday, May 14, 2012[,] and concluding on Tuesday, May 22, 2012[.]

**Hummert**, No. 1549 MDA 2012, at 2-3.

At this second trial, the Commonwealth presented the testimony of almost forty witnesses, including Carolyn Benish, again; Dr. Samuel Land, a

- 3 -

forensic pathologist with Forensic Pathology Associates of Health Network Laboratories in Allentown; and Lieutenant[2] Jason Loper of the Fairview Township Police Department. N.T. Second Trial at 256-331 (Loper), 542-628 (Land), 685-94 (Benish), 728-39 (Loper recalled), 841-50 (Loper recalled).

When Dr. Land was asked, "Doctor, in this case you did not offer an opinion as to the time of Ms. Hummert's death?", he responded, "No, I did not." *Id.* at 604.

Benish again gave testimony at the second trial, which included the following exchange:

> Q.     Did [the victim] indicate to you that she thought someone was stalking her in the months before her death?
>
> A.     Yes.
>
> Q.     She indicated she thought someone was following her in a car; correct?
>
> A.     Yes.

*Id.* at 692-93.

The second trial concluded "with a finding of guilt entered by the jury on Murder in the First Degree and Hindering Apprehension or Prosecution." *Hummert*, No. 1549 MDA 2012, at 3.

"[Appellant] filed a timely Appeal on August 28, 2012" and "raise[d] multiple claims on appeal, including [a] challenge[] to the sufficiency of the

---

[2] Lieutenant Loper was a detective with the Fairview Township Police Department in 2004, when the crime was committed. N.T. Second Trial at 256.

evidence[.]" **Id.** at 1, 3. This Court analyzed the sufficiency of the evidence

as follows:

> The trial court summarized the trial evidence proffered by the Commonwealth as follows:
>
> > The Commonwealth presented evidence that the victim was strangled with a type of cable/dog collar that [] Appellant made. The Commonwealth presented testimony that the victim[,] following her death[,] was dragged through dirt and straw, which was found in her hair, causing her to suffer an abrasion on the lower back and upper buttocks. She had stains located on the coat and sweatpants she was wearing when found and several experts testified that the straw and dirt was similar to that found in the driveway of the Hummert home at 10 Boeing Road. Fibers were also found on the back of the Land Rover which matched the victim's sweatpants. The victim had scratches on her chest and chin, which is consistent with the victim attempting to get the item away from her neck [as] she was being strangled.
> >
> > [The evidence demonstrated that,] [f]ollowing the homicide, [] Appellant dragged the victim out of the house, across the driveway and dragged her into the Land Rover and drove the vehicle to the Giant Grocery Store, which was located a mile away from the Hummert residence. [] Appellant [left] the body in the Giant parking lot, in the vehicle covered with a blanket from the bathroom [of the Hummert residence]. Dressed in a jacket, gloves, hat and boots, [] Appellant went] into the Giant Grocery Store to make a purchase, passed the Land Rover as he left the store[,] and proceeded to walk home.
> >
> > Lastly, there was testimony from [] Appellant about an alleged stalker which had in the past written letters to the victim. A review and comparison of the letters written to the victim from the alleged stalker indicated that the letter's [*sic*] were written by the same person in comparing them to [] Appellant's handwriting, the use of language, the grammatical aspects of the writing and the narrative style.
>
> [Trial Court Opinion, dated November 7, 2012,] at 7-8.
>
> Appellant does not dispute the court's recitation of the evidence. Instead, he argues that there was an "innocent explanation" for

every piece of incriminating evidence admitted at his trial. Appellant's Brief at 22. For instance, the straw and dirt found on the victim's body could have come from a location other than outside the Hummert home and, in any event, the debris did not prove that Appellant was the individual who dragged the victim's body across the driveway. Appellant also contends that the Commonwealth's evidence that he wrote the "stalker letters" did not prove that he murdered his wife. Likewise, the proof that he was at the Giant Grocery store was not dispositive of his involvement in the murder because the Commonwealth could not establish that Appellant was there at the precise time the victim's body was left in the parking lot.

While we agree with Appellant that the Commonwealth was unable to produce direct evidence linking him to the victim's murder, the totality of the circumstantial evidence was more than sufficient to support the jury's verdict. The Commonwealth's evidence demonstrated that the victim was murdered in the home she shared with Appellant, and that the murder weapon was a red cable that Appellant used as a dog leash. The victim's body was dragged outside and across the driveway, placed in her vehicle, and driven to a nearby grocery store. Video surveillance footage and other evidence placed Appellant at the grocery store around the time when the victim's body was likely left there. Appellant's attempt to blame his wife's murder on a fictional stalker that he created demonstrated his consciousness of guilt. In light of this evidence, the jury was able to conclude, beyond a reasonable doubt, that Appellant committed the crime of first-degree murder.

*Id.* at 4-6. This Court affirmed the judgment of sentence on October 9, 2013.

*Id.* at 1. Appellant filed a petition for allowance of appeal, which the Supreme Court of Pennsylvania denied on April 8, 2014.

On May 19, 2014, Appellant filed a *pro se*, timely PCRA petition, raising the following challenges:

DA knowingly presented false testimony.

Det. Loper [perjured] himself in police report or at preliminary hearing under oath.

Commonwealth cannot prove chain of custody of evidence as required.

DA PCRA (1st trial) brief contained fabrications.

No reliable T.O.D. established.

Counsel was ineffective for the following:

    1) failed to object/raise above issues

    2) failed to file nunc pro tunc appeal on undecided[3] suppression issues

    3) failed to examine and report on any prior ineffective assistance of counsel

    4) failure to use contradictory reports to impeach witnesses

    5) failure to fully interview and allow client to assist in defense preparation. . . .

Commonwealth use of preemptory challenges in jury selection violated due process and 6th Amendment rights and was ineffective assistance of counsel. Mandatory minimum sentence not being presented to jury violated jury's authority to determine sentence. Learned this thru legal newsletter.

PCRA Petition, 5/19/2014, at ¶ 6. The PCRA court appointed counsel to

represent Appellant.[4]

_____

[3] Appellant's *pro se* PCRA petition is handwritten. This word is illegible, but we believe it to be "undecided" based on the content of his typed appellate brief.

[4] No appointment order appears in the certified record. However, the next filing in the certified record immediately following the PCRA petition is a motion for extension of time to file an amended PCRA petition "by and through [Appellant's] court appointed attorney." Motion for Extentsion [sic] of Time to File an Amended PCRA Petition Filed By the Defendant, Brian Hummert, 6/16/2014, at 1. The motion additionally stated: "On May 19, 2014, undersigned counsel was appointed to represent Brian Hummert in his Pro Se Petition for Post-Conviction Collateral Relief." *Id.* at 1 ¶ 1.

On December 17, 2018, the PCRA court held an evidentiary hearing, during which Appellant gave the following testimony:

Q.    Okay.   And relative to Detective Loper, there was an allegation that you had talked to [second trial counsel] about the mishandling of evidence specifically from hair?

A.    Yes.  That's one of the issues.  In his -- the police report specifically on page 71 on August 6th of 2004 session, he basically stated he had received the sample of debris and hair back from the PSP lab.  He apparently at his desk decided to separate the hair out of this sample and send it on to somebody else. . . . Like straw here from on here . . . Item 23.  It states envelope with straw from victim's hair at autopsy in parentheses.  However, the autopsy report lists no straw turned over in evidence.

N.T., 12/17/2018, at 39-40, 45.

Appellant later entered a copy of the coroner's report, which he claimed he had only recently acquired and which was never entered into evidence during either of his trials.  Defendant's Exhibit 2, 12/17/2018.  The report stated:  "Time of death:  approx 0700 . . . Estimated time of death (if different from [time pronounced dead]): approx 7:00 am  Date:  March 21, 2004"; no explanation appears in the report for this time.  *Id.* at 1, 3 (not paginated). Appellant testified that, on March 21, 2004, he "was waiting . . . to start work at eight."  N.T., 12/17/2018, at 58.  He continued:  "My manager saw me setting there, knocked on the window, and I went I and clocked in like at 7:45 I believe."  *Id.*  Appellant additionally testified that the time to drive from his home to work was "a minimum of like a 20-minute, half hour drive[.]"  *Id.*

On January 31, 2019, Appellant filed a Memorandum of Law in support of his PCRA petition.  On September 19, 2019, the PCRA court entered an

order denying Appellant's petition, along with an opinion articulating its reasoning for this decision. On October 9, 2019, Appellant filed this timely appeal.[5]

Appellant presents the following issues for our review:

Whether the honorable [PCRA] court erred in denying Appellant's application for PCRA relief and not finding counsel ineffective on the following grounds:

A. Failing to allege prosecutorial misconduct relative to the Appellant's first PCRA petition wherein the prosecutor fabricated facts in the brief as filed.

[B.] Failing to request a jury instruction that life means life.

[C.] Failing to appeal an undecided suppression issue in that trial counsel failed to secure appellate review by securing that the certified record on appeal included the search warrants, affidavits and other documents which resulted in there being no appellate review.

D. Failing to challenge discrepancies in Detective Loper's testimony regarding the Appellant's height, which was a material issue of fact at Appellant's trial and his testimony regarding the length of the chain alleged to have been used which contradicted other witnesses['] testimony.

E. Failing to challenge the inconsistent testimony of Commonwealth witness Carolyn Benish who in the first trial stated that the decedent did not mention the stalker in the two to three months preceding her death[,] whereas, in the second trial, she testified that the decedent did say she believed someone was stalking her in the months preceding her death.

---

[5] Appellant filed his statement of errors complained of on appeal on October 23, 2019. The PCRA court entered its opinion pursuant to Pa.R.A.P. 1925(a) on October 28, 2019.

F.      Failing to object [to] the chain of custody in that Appellant never consented to stipulating to the chain of custody in which pieces of evidence were handled by various individuals and packages opened prior to trial which compromised the integrity of the evidence.

G.      Failing to pursue an alibi based upon the time of death which was in the complete coroner's report which was not provided to the defense prior to trial, and based upon the time of death, Appellant was at another location on that date and time.

Appellant's Brief at 4 (issues re-ordered to facilitate disposition).

"We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error." *Commonwealth v. Medina*, 209 A.3d 992, 996 (Pa. Super. 2019) (quoting *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018)).

Preliminarily, we note that whatever claims Appellant may have concerning his first trial and earlier PCRA petition are moot, because, when he was granted a new trial, the proverbial slate was wiped clean. *See Commonwealth v. Oakes*, 392 A.2d 1324, 1326 (Pa. 1978) ("grant of a new trial wipes the slate clean of the former trial"); *Commonwealth v. A.G.*, 955 A.2d 1022, 1024 (Pa. Super. 2008) (same). Accordingly, Appellant's first issue, challenging the Commonwealth's conduct relating to his first PCRA petition – which he was granted, leading to said new trial – is moot.

Secondly, we observe that Appellant did not include the issue that his trial counsel was ineffective for "[f]ailing to request a jury instruction that life means life" in his PCRA petition.[6]  Ergo, this issue is waived:

> Regardless of the reasons for [an a]ppellant's belated raising of [an] issue, it is indisputably waived.  We have stressed that a claim not raised in a PCRA petition cannot be raised for the first time on appeal.  We have reasoned that permitting a PCRA petitioner to append new claims to the appeal already on review would wrongly subvert the time limitation and serial petition restrictions of the PCRA.  The proper vehicle for raising this claim is thus not the instant appeal, but rather is a subsequent PCRA petition.

*Commonwealth v. Santiago*, 855 A.2d 682, 691 (Pa. 2004) (internal brackets, citations, and quotation marks omitted); *accord Commonwealth v. Reid*, 99 A.3d 470, 494 (Pa. 2014).

All of Appellant's remaining issues allege ineffective assistance of his second trial counsel.

> [C]ounsel is presumed to be effective.
>
> To overcome this presumption, a PCRA petitioner must **plead and prove** that:  (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

---

[6] Appellant's PCRA petition stated, "Mandatory minimum sentence not being presented to jury violated jury's authority to determine sentence."  However, this issue was not included under the list of reasons why "[c]ounsel was ineffective[,]" was not listed in the "above issues[,]" and did not mention ineffective assistance of counsel within the claim itself.  Consequently, Appellant did not include any claim in his PCRA petition alleging ineffective assistance of counsel for failing to request a jury instruction concerning mandatory minimum sentences or a "life means life" instruction.

- 11 -

A failure to satisfy any of the three prongs of [this] test requires rejection of a claim of ineffective assistance[.]

***Medina***, 209 A.3d at 1000 (citations and internal quotation marks omitted) (emphasis added) (some additional formatting).

Appellant's first surviving contention is that second trial counsel was ineffective for failing to file an appeal claiming that the first trial court erred by denying Appellant's suppression motion:

> Counsel was ineffective in failing to appeal or seek appellate review of undecided suppression issues when the certified record did not include the search warrants, affidavits and other supporting documentation which resulted in there being no appellate review.  This claim is of arguable merit and counsel's course of conduct had no reasonable basis.  Appellant has met the prejudice prong and should be afforded a new trial.
>
> No reasonable strategy existed for appellate counsel not to raise the issue once he could have supplemented the record to provide for a meaningful appellate review.  ***See Commonwealth v. Gorby***, 909 A.2d 775 (Pa. Super. 2006).  Appellate counsel knew that because of prior counsel not having a complete record, there was no appellate review of outstanding suppression issues raised. . . . Counsel had no rational explanation for not seeking appellate review of outstanding suppression issues which were not reviewed by this Honorable Court because the record was incomplete due to the record not being complete.  The Appellant was prejudiced in that he did not have a meaningful appellate review of suppression issues which were very pertinent to Appellant's case.

Appellant's Brief at 15-16.

> [T]o prevail [on a stand-alone claim of appellate counsel ineffectiveness], the PCRA petitioner **must show exactly** how appellate counsel was ineffective, by offering additional evidence or controlling authority, missed by direct appeal counsel, **that would have changed the appeal outcome**; or by specifically alleging the **winning claim** or distinct legal theory that appellate counsel failed to recognize; and then by showing how the appeal, as pursued, was incompetent by comparison[.]

*Commonwealth v. Koehler*, 36 A.3d 121, 142 (Pa. 2012) (citation omitted). "Absent such showing," an appellant-petitioner "has failed to demonstrate the arguable merit of his ineffectiveness claim, and is not entitled to relief." *Id.*

Nowhere in Appellant's argument does he maintain -- let alone "show exactly" -- that he would have won his appeal or that the outcome of the direct appeal would have otherwise changed had counsel confirmed that the challenged warrants were in the certified record. Appellant's Brief at 15-16. Hence, Appellant has failed to **plead** and to **prove** the arguable merit prong of his ineffectiveness claim; having failed to satisfy one prong of the ineffectiveness test, Appellant's entire claim fails. *Koehler*, 36 A.2d at 142; *Medina*, 209 A.3d at 1000. Thus, we discern no error of law in the PCRA court's denial of this claim. *Medina*, 209 A.3d at 996.

Appellant next asserts that his second trial counsel was ineffective for failing to challenge details of the testimony of two Commonwealth witnesses – specifically, alleged discrepancies in Lieutenant Loper's testimony regarding the Appellant's height and the length of the cable used as the murder weapon, and allegedly inconsistent testimony of Benish about whether the victim told her about her a stalker in the months preceding her death. Appellant's Brief at 16-19.

Briefly, we note that none of Appellant's filings – not his PCRA petition, his memorandum of law, nor his appellate brief – cite to the notes of testimony from his second trial for Lieutenant Loper's alleged statements. Appellant has therefore violated Pa.R.A.P. 2119(c):

> If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears[.]

We admonish Appellant and, more importantly, his counsel and remind them of the following:

> The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.

***Commonwealth v. Briggs****, 12 A.3d 291, 343 (Pa. 2011).

Additionally, we fail to see the inconsistency in Benish's testimony. In his brief, Appellant states: "At the first trial, [Benish] testified she was not aware that the victim was being stalked; however, at the second trial, she testified the victim had alluded to being stalked." Appellant's Brief at 19. This assertion is contrary to the record. During the first trial, when Benish was asked if the victim "ever mention[ed the] existence or possible existence of a stalker[,]" she replied: "Yes." N.T. First Trial at 528. Benish then gave details about her conversation with the victim, who had thought that somebody was following her. *Id.* at 528-29. During the second trial, when asked if the victim indicated to her "that she thought someone was stalking her in the months before her death[,]" Benish again answered, "Yes." N.T. Second Trial at 692. These statements are not in conflict.

- 14 -

Assuming that Appellant had provided proper citation to the record for the portion of Lieutenant Loper's testimony that he was challenging and assuming that there were some inconsistency between Benish's first and second trial testimonies, Appellant's ineffectiveness claims relating to these witnesses' testimonies would still fail. For both contentions, Appellant has failed to establish "prejudice, to the effect that there was a reasonable probability of a different outcome." *Medina*, 209 A.3d at 1000. None of these details – Appellant's height, the cable's length, nor the victim's conversations with Benish – were cited in this Court's sufficiency analysis on direct appeal from the second trial. *Hummert*, No. 1549 MDA 2012, at 4-6. These particulars thereby were not needed to establish Appellant's guilt, and the outcome of the trial would not have changed even if trial counsel had challenged them. As Appellant has failed to satisfy one of the three prongs of the ineffectiveness test for either his challenges to Lieutenant Loper's or Benish's testimony, both claims fail. *Medina*, 209 A.3d at 1000.

Appellant's penultimate ineffectiveness claim is that counsel at his second trial was ineffective for "failing to object [to] the chain of custody in that Appellant never consented to stipulating to the chain of custody in which pieces of evidence were handled by various individuals and packages opened prior to trial which compromised the integrity of the evidence." Appellant's Brief at 19. He further asserts that he "was never consulted by counsel about any such stipulation." *Id.* at 20.

- 15 -

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned analysis of the Honorable Craig T. Trebilcock, we conclude that Appellant's issue merits no relief. The trial court opinions comprehensively discuss and properly dispose of that question:

> [Second trial counsel] stipulated to the chain of custody as part of a reasonable trial strategy to prevent the Commonwealth from putting more government witnesses on the stand and thereby preventing harmful testimony against [Appellant]. The [trial c]ourt [found that] the trial attorney had a reasonable basis for stipulating to the chain of custody. The [trial c]ourt [found Appellant]'s claim that he would not stipulate to be incredible. [Appellant]'s argument is self-serving 20/20 hindsight[.]

PCRA Court Opinion, dated September 19, 2019, at 10-11.

> [T]he PCRA Court notes that [Appellant]'s claims of exactly which pieces of evidence in the chain of custody were vague and half-formed. In [Appellant]'s Memorandum of Law, the only example of an alleged failure in the chain of custody was that Detective Loper opened evidence packages containing the victim's hair samples at his desk. *See* [Appellant]'s Memorandum of Law at 7-8. This unfounded accusation comes from the testimony [Appellant] himself and the basis of this claim is left unclarified in his Memorandum of Law and in the PCRA Hearing held on this matter, except for a vague reference to a police report that "basically" implies Detective Loper opened an evidence package containing hair at his desk. [N.T., 12/17/2018, at 39-40]. This police report referenced by [Appellant] at the hearing was never shown to the PCRA Court or entered into evidence on the matter. Accordingly, [Appellant] has not carried his burden and this issue should be denied.
>
> At the PCRA hearing, but not in his Memorandum of Law, the [Appellant] also made other vague references to items in the chain of custody that he claimed should not have been stipulated to by his attorney. . . . [Appellant] also takes issue with an entry marked "Envelope with straw from V[ictim's] hair (at autopsy)" in the chain of custody report created by the District Attorney's office. [Appellant] claims that the autopsy report does not record straw

- 16 -

being found in the victim's hair and that the straw was found by the funeral home and later given to the police. [*Id.*] at 4[5]; [N.T. Second Trial] at 359-61. [Appellant] offered no evidence regarding how these items were defective or mishandled or on what basis his trial counsel was unreasonable for stipulating to the chain of custody regarding these matters. That the straw found in the victim's hair was found at a funeral home rather than an autopsy table does not automatically establish a faulty chain of custody. Further, the fact that the straw was found in the [victim]'s hair at the funeral home by the funeral home director was presented at trial to the jury, and they, as factfinders, still found [Appellant] guilty. *See* N.T. Second Trial at 359-61. The record also shows that [Appellant]'s trial counsel sent him a copy of this chain of custody on March 1, 2012, giving [Appellant] ample time before the trial was held on May 14, 2012, to bring these issues up to his attorney. *See* Cover Letter from [Second Trial Counsel] and Chain of Custody as Prepared by District Attorney's Office of March 1, 2012. There is no credible record that [Appellant] objected to these stipulations being entered into by his counsel or that he was uninformed. The [trial c]ourt [found] that this is an incredible claim by [Appellant], manufactured after an adverse verdict. Accordingly, it is properly denied.

Trial Court Opinion, dated October 28, 2019, at 3-4.

Finally, Appellant alleges that second trial counsel was ineffective for "failing to pursue an alibi based upon the time of death which was in the complete coroner's report which was not provided to the defense prior to trial, and based upon the time of death, Appellant was at another location on that date and time." Appellant's Brief at 22. According to the coroner's report, the victim's time of death was "approx." 7:00 a.m. on March 21, 2004. Appellant testified at the PCRA hearing that he arrived at work by 7:45 a.m. that day. N.T., 12/17/2018, at 58. He also testified that the time to drive between his house and work was 20 to 30 minutes. *Id.* Even if a jury found these statements wholly credible, then Appellant still could have had time to

kill the victim at 7:00 a.m., to leave for work by 7:15 a.m., and to arrive at work by 7:45 a.m. This timeline does not change if Appellant left for work from the Giant parking lot, as the Giant was only one mile away from Appellant's residence. *Hummert*, No. 1549 MDA 2012, at 2. Therefore, admission of Appellant's work records and/or testimony by his manager still would not have created as an alibi for Appellant; Appellant never claimed and presented no evidence that he was travelling to or at work at the time of death listed on the allegedly previously unavailable coroner's report – *i.e.*, 7:00 a.m. For this reason, Appellant has failed to establish that there was a reasonable probability of a different outcome had second trial counsel "pursue[d]" this "alibi." *See* Appellant's Brief at 22. Thus, Appellant has failed to establish the prejudice prong of the ineffective assistance of counsel test, and his entire claim thereby fails. *Medina*, 209 A.3d at 1000.

For the reasons given above, we conclude that all of Appellant's issues raised on appeal are waived or meritless. Having discerned no error of law, we affirm the order below. *Id.* at 996.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/15/2020